**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE WESTERN DIVISION**

MARY STEWART as next of kin and
Administrator Ad Litem of the Estate of
DARRIUS STEWART, Deceased

   Plaintiffs,

vs.

OFFICER CONNER SCHILLING Individually and in his official capacity as a former Police Officer of the Memphis Police Department,

   Defendant.

Docket No. _____

JURY DEMANDED

## COMPLAINT

Plaintiffs Mary Stewart as next of kin and as Administrator Ad Litem of the Estate of Darrius Stewart, deceased, file this action pursuant to 42 USC § 1983 and the Fourth and Fourteenth Amendments to the Constitution of the United States of America arising out of the wrongful death of Darrius Stewart on July 17, 2015, and in support, shows as follows:

**I. PARTIES**

1. Plaintiff Mary Stewart is bringing this action in her individual and representative capacity as next of kin and as the Administrator Ad Litem of the Estate of Darrius Stewart, deceased, who was a resident citizen of the State of Tennessee and was wrongfully and unconstitutionally killed by Defendant as set forth in this Complaint during the evening of July 17, 2015. Mary Stewart is a resident citizen of Shelby County, Tennessee. Plaintiff Mary Stewart, as the Administrator Ad Litem of the Estate of Darrius Stewart, deceased, is a proper party to bring this action for the wrongful death of Darrius Stewart pursuant to Tenn. Code Ann. §20-5-101 et seq. including, but not limited to, Tenn. Code Ann. § 20-5-106.

2. Plaintiffs Mary Stewart shall be referred to as "Plaintiff" throughout this action.

3. Darrius Stewart shall be referred to as "Darrius" or "Darrius Stewart" or "decedent" throughout this action.

4. Defendant Conner Schilling ("Officer Schilling" or "Defendant Schilling") is upon information and belief, an adult resident citizen of Memphis, Tennessee. At all times pertinent hereto, Defendant Shilling was an employee and officer with the Memphis Police Department, acting under the color of state law and within the course and scope of his employment with the Memphis Police Department. Plaintiff is bringing this action against Defendant Schilling in both individual capacity and in his official capacity as an officer for the Memphis Police department.

## II.  JURISDICTION AND VENUE

7. This Court has jurisdiction over this action based on the important questions of federal law presented by this case. Plaintiff brings this action pursuant to all applicable federal statutes including, but not limited to, 42 U.S.C. §§1983 and 1988.

8. Venue is proper in this Court because a substantial part of the events or omissions giving rise to the causes of action alleged in this Complaint occurred within the Western District of Tennessee and specifically Shelby County, Tennessee.

### III. AGREEMENT BETWEEN THE PARTIES

9. On February 11, 2019 Plaintiff, with consent of Defendant, entered a *Stipulation Of Voluntary Non-Suit As To Connor Schilling In His Individual Capacity* Pursuant To FCRP 41(a)(1)(A)(ii)  (Case 2:16-cv-02574 Doc. 193 02/11/19 Page ID 2673) which stated:

> IT IS HEREBY STIPULATED AND AGREED by and between the parties and/or their respective counsel(s) that the above-captioned action is voluntarily dismissed, *without prejudice* against the defendant Connor Schilling, Individually, pursuant to the Federal Rules of Civil Procedure 41(a)(1)(A)(ii).
>
> As part of this Stipulation, the parties further agree that the plaintiffs may refile within a year or within 60 days of the termination of any appeals related to or stemming from the filing of the instant lawsuit. Further, counsel for Connor Schilling, individually agrees to accept service in the event the matter is refiled. Finally, the parties agree that Plaintiffs shall not amend their initial Complaint to add additional claims or to comport with discovery already taken in this matter.

10. On February 12, 2019 the Court granted the voluntary dismissal.

### IV. FACTS

11. On July 17, 2015, Darrius Stewart, a black male, was a passenger in a vehicle stopped by Officer Schilling, a white male.

12. The alleged basis for the stop was a faulty headlight.

13. Each of the occupants of the vehicle were complicit with the officer's instructions and answered his questions truthfully.

14. None of the occupants of the vehicle had used alcohol or drugs on June 17, 2015.

15. For reasons unknown to the Plaintiffs, and despite the lack of any indication that

any of the occupants of the vehicle were known criminals or were engaged in criminal activity, Office Schilling indicated he was going to run a computer query regarding whether or not any of the occupants had outstanding warrants.

16. Upon information and belief, this practice occurs more regularly by the Memphis Police Department checking on young black males for warrants than it does established older white males.

17. Officer Schilling claims he received information that indicated Darrius may have outstanding warrants.

18. The Plaintiff disputes the validity of the warrants.

19. That Darrius Stewart is and was at all times, as a matter of fact and a matter of law, innocent of any and all charges purportedly made against him while he was a minor.

20. According to eyewitnesses, Conner Schilling began being "rough" with Darrius Stewart before he knew of warrants or asked him to exit the vehicle. Upon information and belief, Darrius Stewart had provided the exact same information to members of the Memphis Police Department twice in the previous year, once for an automobile accident he was involved in and another when he was a passenger in a different vehicle. Neither of those times was he advised that a warrant was outstanding, nor was he advised that any state wanted him held for extradition.

21. After allegedly obtaining the information regarding potential warrants by the decedent, Office Schilling returned to the stopped vehicle and directed Darrius to exit the vehicle.

22. Darrius Stewart fully complied with the directions of Officer Stewart and exited the vehicle and allowed himself to be "patted down" to satisfy Officer Schilling that he was not armed and did not pose a threat.

23. Officer Schilling then placed Darrius Stewart in the caged backseat of the police car, without being handcuffed and without being placed under arrest.

24. Officer Schilling then issued a citation to the driver of the vehicle and allowed that vehicle to leave the scene.

25. Upon information and belief, Officer Schilling did not receive any radio transmissions regarding any law enforcement entity's intent to transport or detain Darrius Stewart before allowing the stopped vehicle to leave.

26. The City has yet to explain how Schilling instructed the vehicle to exit the scene without knowing whether or not he was going to arrest Darrius Stewart.

27. According to the Memphis Police Department, Officer Schilling then left his radio on after receiving a "coded" transmission which is intended to alert the officer to receive radio transmission information outside the presence of the "suspect."

28. According to the Memphis Police Department, Conner Schilling allowed Darrius Stewart to overhear radio transmissions that stated he was to be held on outstanding warrants.

29. According to the Memphis Police Department, Conner Schilling did not call for back-up support after allegedly learning that he needed to detain and transport Darrius Stewart.

30. Conner Schilling was physically larger and stronger than Darrius Stewart.

31. Conner Schilling had been trained in use of force, hand-to-hand combat and in physical submission tactics.

32. Darrius Stewart had not been trained in use of force, hand-to-hand combat or physical submission tactics.

33. According to Conner Schilling, he then intended to arrest the uncuffed Darrius

Stewart and place him in handcuffs.

34. After Officer Schilling opened the door to the back of the police car, Darrius Stewart tried to flee.

35. Conner Schilling elected to use force to detain Darrius Stewart and as Darrius attempted to flee, Schilling began assaulting Stewart.

36. While Conner Schilling was on top of Darrius Stewart on the ground, Witnesses heard Darrius loudly cry "I can't breath" or "I can't fucking breath."

37. During the struggle, despite having previously patted down Darrius, and despite knowing Stewart was attempting to flee, Conner Schilling shot Darrius once in the upper right chest.

38. That first gunshot was not a fatal shot and was not the cause of the death of Darrius Stewart.

39. Some period of time passed and Conner Schilling again shot Darrius Stewart as Darrius Stewart had stood up and was in the process of turning and fleeing away from the scene.

40. The second shot was fatal to Darrius Stewart.

41. Darrius Stewart was an unarmed young black man attempting to flee when he was killed by an enraged and impassioned Conner Schilling.

42. As a direct and proximate result of the actions or omissions of Defendant, Darrius Stewart was killed, and his constitutional rights under the United States Constitution and the Tennessee Constitution were violated.

43. It was foreseeable that decedent and his family would sustain the significant damages and devastating loss as a result of the actions and omissions of Defendant.

44. At all times relevant hereto, Defendant Schilling was acting in his official capacity as law enforcement officer for the Memphis Police Department and acting under color of state law.

45. Alternatively, at all times relevant to the complaint herein, Defendant Schilling was acting in his individual capacitiy.

## V. CIVIL RIGHTS VIOLATIONS AND DEFENDANT SCHILLING
### (42.S.C. SEC.1983)

46. The allegations set forth in the previous paragraphs are adopted and incorporated herein by reference. Further, the below allegations are to read as applicable to every cause of action against the Defendant.

47. Officer Schilling committed the above described actions and omissions under color of law and under color of his authority as a law enforcement officer, substantially depriving Darrius Stewart of his rights, privileges, and immunities guaranteed to him as a citizen of the United States in violation of 42 § 1983 and deprived him of rights guaranteed to him by the Constitution of the United States of America including, but not limited to, the Fourth and Fourteenth Amendments. Specifically he was deprived of rights including, but not limited to: (a) freedom from unlawful seizure of his person; (b) freedom from the use of unjustified and excessive force; and (c) freedom from deprivation of liberty without due process.

48. Plaintiff avers that firing gunshots toward an individual who is unarmed and fleeing excessive and/or unreasonable deadly force against the decedent in violation of the Fourth and Fourteenth Amendments of the United States Constitution. Defendant Schilling committed

the actions described herein and/or omissions under the color of state law and by virtue of their authority as law enforcement officers for the Memphis Police Department and substantially deprived Darrius Stewart of his clearly established rights, privileges, and immunities guaranteed to him by the Fourth and Fourteenth Amendments to the United States Constitution in violation of 42 U.S.C. §1983 and 1988.

49. Defendant deprived Darrius Stewart of fundamental rights guaranteed under the Constitution including, but not limited to, the right to be free from unlawful seizure of his person; free from the use of unjustified, unnecessary and excessive force; and free from the deprivation of life and liberty without due process of law.

50. The unreasonable and excessive use of force against Darrius Stewart deprived him of his right to be free from unreasonable, excessive and deadly force and unreasonable seizure through means intentionally applied under the Fourth Amendment to the U.S. Constitution. The Plaintiff avers that the Defendant Officer Schilling knew to a moral certainty that the shots fired at Darrius Stewart as means intentionally applied to seize him were likely to cause severe injury or

51. As a direct and proximate result of the actions and omissions of the Defendant, Darrius Stewart was killed and his rights under the Fourth Amendment of the U.S. Constitution were violated.

52. In particular, Plaintiffs aver that they had a constitutional right of familial association with their son. Further, Plaintiff avers that they had a constitutional right to the society and companionship of their son. As a direct result of Defendants acts and omissions, Plaintiff lost her son and suffered great losses of a personal and pecuniary nature, including but not limited to the loss of companionship, society and support of the Decedent as well as grief, sorrow and mental suffering. Plaintiff had close emotional ties to their son Darrius Stewart. Plaintiff avers

that the Defendant violated these rights and that his actions constituted an unconstitutional termination of their familial association and society and companionship of her son under the Fourteenth Amendment to the United States Constitution.

53. Defendant committed the above described actions and/or omissions under the color of state law and by virtue of his authority as a police officer of the Memphis Police Department and substantially deprived Darrius Stewart of his clearly established rights, privileges and immunities guaranteed to him as citizens of the United States by the Fourth and Fourteenth Amendments of the United States Constitution in violation of 42 U.S.C. §1983 and 1988.

## VI. DAMAGES

54. As a direct and proximate result of the acts and/or omissions of Defendant, Darrius Stewart was killed on July 17, 2015, and Plaintiff, as his parents, was injured. The injuries for which Plaintiff seeks compensation, include, but are not limited to:

    a. Physical injuries, including the death of her son, Darrius Stewart, and his resulting loss of familial association with her;

    b. Conscious physical and emotional pain and suffering of her son, Darrius Stewart, from the time of injury until his death, and his loss of the pleasures of life;

    c. Medical expenses incurred for her son, Darrius Stewart;

    d. Funeral expenses incurred for her son, Darrius Stewart;

    e. The pecuniary value of the life of her son, Darrius Stewart, including but not limited to the loss of his companionship and;

    f. Infliction of emotional distress, *negligent*, and/or reckless and/or intentional,

upon Plaintiff;

    g.    Prejudgment interest and/or postjudgment interest and statutory and discretionary costs to the extent permitted by law;

    h.    Attorney fees pursuant to applicable law, including but not limited to 42 U.S.C. § 1988;

I. Injunctive and/or declaratory relief that the acts and conduct set forth above were unconstitutional, and precluding them from engaging in such activities in the future; and

    j.    All such further relief, both general and specific, to which they may be entitled under the premises.

    k.    It was foreseeable that the above damages would be sustained as a result of the policies, customs, lack of training, actions, and omissions of Defendants.

## VII. PUNITIVE DAMAGES

55. The allegations set forth in the previous paragraphs are adopted and incorporated herein by reference.

56. The actions of Defendants were performed intentionally, recklessly, fraudulently and/or maliciously, thus entitling Plaintiff to a substantial award of punitive damages under applicable law.

## VIII. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff pray that summons issue and that Defendant be served and made to answer herein; that a jury trial be held wherein Plaintiffs are awarded compensatory damages in the amount of $7,170,000.00 and punitive damages in the amount of $10,000,000.00 for the wrongful death of Darrius Stewart on behalf of the Estate of

Darrius Stewart and his family, and that Plaintiff be awarded such other and further relief, both general and specific, to which she may be entitled under the premises.

PLAINTIFF DEMANDS A TRIAL BY JURY FOR ALL CLAIMS ALLOWABLE BY LAW WHEN THE ISSUES ARE JOINED HEREIN.

Respectfully submitted,

On Behalf of Mary Stewart:

/s/ Malik Z. Shabazz , Esq.

Malik Z. Shabazz, Esq.
DC #458434
attorneyshabazz@yahoo.co
6305 Ivy Lane #608
Greenbelt, MD 20770
(301)513-5445